### PETER PENDERGAST vs. ADAMS EXPRESS COMPANY.

A commissary in a military camp, to whom common carriers have intrusted blank envelopes for convenience in sending money, is not authorized, by addressing such an envelope to a place beyond their route, to charge them as common carriers to that place for money placed in the envelope.

A paper given by common carriers to the person sending a package acknowledged the receipt of the package addressed to a place beyond their route, and declared that it was received on the special agreement that they should forward it to their agent nearest or most convenient to destination only, and should then deliver it to other parties to complete the transportation; such delivery to terminate all liability of said carriers for the package. *Held*, that they were not liable for a loss occurring beyond their route.

CONTRACT. Trial in the superior court, before *Lord*, J., who reported the case for the determination of this court. The material portions of the report were as follows :

" At the trial there was evidence tending to show that the plaintiff, a soldier in camp some four miles from Newbern, North Carolina, delivered to George D. Sargeant, a commissary, in the captain's tent, $200 to be sent by express to the plaintiff's wife at Lowell, Massachusetts. Sargeant, having blank envelopes of the defendants in camp, intrusted to him by the defendants for convenience in sending money, put the $200 therein and directed it himself, as follows, the part inclosed by brackets being written, and the rest printed :

" ' Adams Express Co. Newbern, N. C. [$200] Freight [Coll] From [Peter Pendergast] Newbern N. C. [July 10] 186 [5] For [Mrs. Mary A. Pendergast No. 7 Varnum Building Centreville River Street Lowell Mass.]'

" In a day or two Sargeant took the envelope with the money in it, unsealed, to the defendants' office in Newbern, went to the counter where one of the defendants' clerks was on the opposite side, ready for business, took out the $200 from the envelope, and laid the money and the envelope, side by side, on the counter before the clerk, who took them up in presence of Sargeant, put the $200 into the envelope, sealed it up, threw it back into a box, and gave him a receipt therefor, the material portion of which was as follows, the part inclosed by brackets being written, and the rest printed :

" ' Adams Express Company. Great Eastern, Western & Southern Express Forwarders. No 3 [$200] Newbern N. C. [July 12, 1865] Received from [Peter Pendergast, 1 Pc] sealed and said to contain [Two Hundred Dollars] addressed [Mrs. Mary A. Pendergast, Lowell, Mass.] Upon the special acceptance and agreement that this company is to forward the same to its agent nearest or most convenient to destination only, and then to deliver the same to other parties to complete the transportation — such delivery to terminate all liability of this com pany for such package. For the Company, [T. C. Chand, Jr.]'

" This receipt, on his return to camp the same day, Sargeant gave to the plaintiff, who has kept it ever since. It did not appear that Sargeant had any conversation with the defendants' clerk, or any one in behalf of the defendants, on the subject, or that Sargeant or the plaintiff had any knowledge of the printed form of receipt. It appeared that the Adams Express Company only ran from Newbern north as far as Boston, and had no express to Lowell, but that Sargeant & Company, a distinct and independent concern, owned and ran the express between Boston and Lowell; that the defendants conveyed the package to Boston, arriving there on July 19 in due season, and there delivered it to Sargeant & Company's express at their office in Boston, and received of them $2.50 for the carriage from Newbern to Boston; that Sargeant & Company the same day carried the package to Lowell; and that Sargeant & Company's charges were forty cents from Boston to Lowell, and, as expense, the $2.50 paid to the defendants at Boston. There was evidence tending to show that the package was carried to the plaintiff's wife in Lowell by Sargeant & Company's express the day it arrived in Lowell, and was then found to contain only $100, which was delivered to the plaintiff's wife, and that the missing $100 was taken out after the delivery to Sargeant & Company's express, and at the Lowell end of the route, before it was delivered to the plaintiff's wife. Nothing was paid to the defendants for carriage except as aforesaid. There was no other evidence of the contract between the plaintiff and the defendants.

" Upon this evidence, the defendants asked the judge to rule as follows: 1. By the terms of the receipt, if the defendants' express only went to Boston, and did not go to Lowell, and Sargeant & Company were a regular and proper express company running between Boston and Lowell, and the defendants delivered the package at Boston to Sargeant & Company to be transmitted to Lowell, and the loss was occasioned through the fault of Sargeant & Company or their agents, after the package was delivered to and received by them, then the defendants would not be liable for such loss. 2. If the contract was to carry to the end of the defendants' route and there deliver to another proper express company or proper parties, to be transmitted to Lowell, and Boston was the end of the defendants' route, and they there delivered the package to Sargeant & Company, a proper express running between Boston and Lowell, to be carried to Lowell, and it was so received by them, and, the loss was occasioned by the fault of Sargeant & Company, after they received it, then the defendants would not be liable for such loss.

" But the judge refused so to rule, and instructed the jury that upon the pleadings and evidence, the contract between the plaintiff and the defendants was to carry the package with the money in it safely from Newbern to Lowell, and then deliver it to Mrs · Pendergast, to whom the package was addressed, and that if they, at Boston, delivered it to Sargeant & Company to be conveyed by them to Lowell and there delivered to the plaintiff's wife as addressed, and the $100 which were missing were taken, out of the package after its delivery to Sargeant & Company, and after its arrival at Lowell, and before delivery to the plaintiff's wife, the defendants would be liable for the loss thereof. The judge also directed the jury to find whether the missing $100 were taken after the delivery of the package to Sargeant & Company, and after the arrival at Lowell and before its delivery to the plaintiff's wife.

" The jury returned a verdict for the plaintiff for $100 and interest, and found that the missing $100 were taken out of the package after its arrival in Lowell and while in the custody of

Sargeant & Company, and before delivery to the plaintiff's wife. The question where the money was lost was fully argued to the jury upon both sides upon all the evidence either party had, and the presiding judge, in order to avoid a new trial, if consistently with the rights of the parties it could be avoided, gave the above direction to the case."

*D. S. Richardson*, for the defendants.

*J. C. Kimball*, for the plaintiff.

GRAY, J. When a common carrier is a corporation established for the purpose of transporting goods over a certain route, goods delivered to such corporation, directed to a more distant place, are presumed by our law to be received for the purpose of being carried by it over its own route only, and then forwarded by another carrier to their destination. *Burroughs* v. *Norwich & Worcester Railroad Co.* 100 Mass. 26. When there is no charter to indicate the limits of the carrier's business, and no written agreement between him and the other party, the question what was in fact the extent of his undertaking is a question for the jury. *Lowell Wire Fence Co.* v. *Sargent*, 8 Allen, 189.

In the report of the present case, we are unable to find any evidence of an undertaking by the defendants to be liable as common carriers of the plaintiff's money as far as Lowell. It appeared that the defendants had no express farther north than Boston, and they did not appear to have held themselves out as carriers beyond that place. The commissary in the same camp with the plaintiff in North Carolina seems to us to have been the agent of the plaintiff only. The defendants, by intrusting him with blank envelopes with their name printed thereon, " for convenience in sending money," did not authorize him to address such an envelope to a place beyond the end of their line, and thus charge them as common carriers to that distance. The receipt taken by him from the defendants at the time of delivering the money to them, and handed by him to and since kept by the plaintiff, expressly limited their undertaking to forwarding the same to their agent nearest or most convenient to the destination, and then delivering it to other parties to complete the transportation. We are therefore of opinion that the

ruling, made for the purposes of the trial, "that upon the pleadings and evidence the contract between the plaintiff and the defendants was to convey the package with the money in it safely from Newbern to Lowell, and there deliver it to Mrs. Pendergast, to whom the package was addressed," was incorrect; and that, as no power is reserved by the terms of the report to render judgment for the defendants, the entry must be

*Verdict set aside.*