INHABITANTS OF PLANTATION No. 4, R. 1, *vs.* JOHN R. HALL
and others doing business under the name of the EASTERN EX-
PRESS COMPANY.

*Common carrier—when liability ceases.*

Where a common carrier takes goods to forward and deliver, if within his route,
if not, to deliver to the connecting express or a stage at the most convenient
point, his liability as a common carrier ceases when the goods arrive at such
convenient point of intersection. The common carrier then becomes a for-
warder and he ceases to be an insurer of the safety of the goods forwarded.

In a suit against such forwarder for negligence, the burden of proof is on the
plaintiff to establish the same.

ON EXCEPTIONS.

CASE against the defendants, who are doing business under the
firm name and style of the Eastern Express Company, for neg-
lecting to deliver to plaintiffs a package of money intrusted to the
defendants as common carriers. The verdict was for the plaintiffs,
and the defendants excepted to certain rulings and instructions,
the facts in relation to which are sufficiently stated in the opinion.

*F. A. Wilson,* for the defendants.

*J. F. Robinson* and *W. H. McCrillis,* for the plaintiffs.

APPLETON, C. J. This action is against the defendants as com-
mon carriers for neglect in not delivering a package of money in-
trusted to them as such.

The plaintiffs on August 21, 1866, wrote N. G. Hichborn, treas-
urer of Maine, to forward to them the amount allowed for aid to
the families of volunteers, and requested him to send "the money
by express or a check on one of the Bangor Banks."

The defendants, by their agent, received a package of $527.34
under an agreement "to forward and deliver at destination, if
within their route, and if not, to deliver to the connecting express,

stage, or other means of conveyance, at the most convenient point."

The express route of the defendants was from Augusta to Mattawamkeag. Lincoln was an intermediate station and the nearest on the route to No. 4. One Patterson drove the mail stage from Lincoln to Springfield and his route was the nearest and only express or mail route to No. 4. Said Patterson had long been in the habit of carrying packages for others as well as the defendants. The money arrived at Lincoln and was there delivered to Patterson who appropriated the same to his own use.

The defendants were insurers during the whole of their route. But no loss occurred " within their route." The money was safely carried to the place where it was to be delivered "to the connecting express, stage, or other means of conveyance." The defendants have made no contract to carry the money farther or to make any delivery other than is specified in their contract. They have delivered to the person and at the place where they agreed to deliver it. It was held in *Gray* v. *Jackson*, 51 N. H. 9, after a very learned and elaborate examination of all the authorities, that common carriers between two points, taking a parcel for a place beyond their route and delivering it, according to the usage of the business, to the next carrier, who misappropriated the same, were not responsible for its loss. In *Burroughs* v. *Norwich & Worcester R. R. Co.*, 100 Mass. 26, it was held that a corporation established to transport goods for hire between certain places and receiving goods directed to a more distant place is not responsible beyond the end of its own route, as a common carrier, but only as a forwarder, unless it makes an express agreement extending its liabilities. In *Pendergrast* v. *Adams Express Co.*, 101 Mass. 120, the principle was affirmed that the liability of the company, as carriers, ceases at the termination of their route. In the absence of a special contract a common carrier is only liable for the extent of his own route and for the safe storage and delivery to the next carrier. *Baltimore R. R. Co.* v. *Schumacher*, 29 Maryland, 176. A common carrier is not liable for goods lost be-

yond the end of his route, unless by special contract. *Skinner* v. *Hall*, 60 Maine, 477. In *American Express Co.* v. *Second National Bank*, 69 Penn. 394, the express company undertook to " forward to the nearest place of destination reached by this company." " If they were carriers at all," observes Sharswood, J., " it was to the nearest point of destination ; beyond that they were forwarders only. There was nothing unreasonable, unusual, or unlawful in such a contract. It is very well settled that forwarders are not insurers as common carriers. They are liable only as ordinary bailers to carry for hire." In *Read* v. *U. S. Express Co.*, 48 N. Y. 462, it was held when an express company agrees to forward a package to a point beyond the terminus of its route, the contract limiting its liability to that of forwarders, through charges not having been paid, that their liability as carriers ceases at the end of their route, and if the package arrives there in safety and is delivered with proper instructions to another responsible carrier upon the line to the point of destination, its liability ceases.

Such, unquestionably, is the law. What their liability may be as forwarders is not now before us. They are not declared against as such.

The instruction, that if the defendant knew Patterson to be dishonest and untrustworthy and not a safe person to whom to intrust the package, or by ordinary care might have known it, the defendants would be guilty of negligence for which they would be liable, was erroneous.

The contract of the defendants was " to deliver to the connecting express, stage, or other means of conveyance, at the most convenient point." This they have done. It was no part of their duty, as carriers, to make special investigations as to the integrity or trustworthiness of the connecting express or stage driver. They did not, as carriers, contract so to do. All they had to do was to deliver the money as they agreed. They were not in the first instance to make inquiries. They had a right to assume that the person to whom they were to deliver the money in their charge was one to whom the delivery would be satisfactory to the

plaintiffs. The burden, therefore, would be on the plaintiffs to prove negligence, not on the defendants to disprove it. The instruction imposed on the defendants the duty of exoneration, but the burden was on the plaintiffs to show negligence in the defendants in delivering the money to the person to whom, and at the time and place when, it was so delivered.

*Exceptions sustained.*

CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.